UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HEATHER SILER & THERESA LEE,
individually and on behalf of
FLSA Collective Plaintiffs and the Class,

         Plaintiffs,

   - against -

LANDRY'S SEAFOOD HOUSE – NORTH
CAROLINA, INC., et al.,

         Defendants.

OPINION AND ORDER

13-CV-587 (RLE)

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

Plaintiffs Heather Siler ("Siler") and Theresa Lee ("Lee") (collectively, "Plaintiffs") were employed as restaurant workers for Defendant Landry's Seafood House – North Carolina, Inc. ("Landry's"), which does business as Landry's Inc., which does business as Vic & Anthony's. On January 25, 2013, Plaintiffs commenced this action as a putative class action under Federal Rule of Civil Procedure 23 on behalf of themselves and others similarly situated against Landry's "and/or other entities affiliated or controlled by Landry's Seafood House" (collectively "Defendants"). (Compl. ¶ 1.) They claim that Defendants failed to pay minimum wages, improperly took a tip credit, improperly retained gratuities, and failed to properly issue pay stubs as required under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, 206, 216(b), and New York Labor Laws §§ 190, 633, and 650. (*Id.*)

Plaintiffs filed an Amended Complaint on May 28, 2013. On behalf of the proposed class, the Amended Complaint seeks damages for violations of the FLSA and New York Labor Law, liquidated damages, plus attorneys' fees and costs. (*See* Am. Compl. ¶¶ 47, 55, 60.) On

September 10, 2013, United States District Judge Jesse Furman granted Plaintiffs' unopposed motion to conditionally certify the case as a collective action under the FLSA, stating:

> The potential plaintiffs in this collective action shall consist of all individuals who worked for Vic & Anthony's, including but not limited to waiters, runners, busboys, bartenders, and captains, at any time from February 1, 2012 to the present, who received at least one hour's pay at a wage rate less than the minimum wage rate for non-tipped employees.

(Doc. No. 19.) On September 17, 2013, the Parties jointly submitted a proposed Notice of Lawsuit Form and Consent to Join Form. (Doc. No. 20.) Shortly thereafter, the Parties requested a settlement conference before a Magistrate Judge, and on October 3, 2013, the action was referred to the undersigned for settlement. (Doc. No. 25). On October 16, 2013, the Court held a settlement conference at which the Parties reached a resolution of the case. On November 5, 2013, the Parties consented to conduct all further proceedings before the undersigned. (Doc. No. 30.) On April 30, 2014, the Court held a Fairness Hearing. No written objections were filed and no one objected to the settlement at the Fairness Hearing.

Before the Court are motions for: (1) final approval of the settlement; and (2) approval of professional and administrative fees, reimbursement of expenses, and service awards.

Having considered the April 25, 2014 joint letter of the Parties requesting approval of the settlement, the supporting declaration of Plaintiffs' counsel Suzanne B. Leeds, the oral argument presented at the April 30, 2014 Fairness Hearing, and the complete record in this matter, for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

The Court certifies the following class under Federal Rule of Civil Procedure 23(a) and (b)(3), for settlement purposes: all present and former persons employed as servers, runners, bus-persons, bartenders, and/or any other customarily tipped employees employed at Vic &

Anthony's restaurant, memorialized in the Settlement and Release Agreement ("Settlement Agreement") from February 1, 2012, to October 16, 2013.

## II. BACKGROUND

Prior to the settlement conference, the Parties exchanged document discovery and independently performed audits of Defendants' records to determine if Defendants owed Plaintiffs any wages. (Joint Fairness Letter, April 25, 2014, Doc. No. 35 ("Joint Letter") at 2). At the October 16, 2013 settlement conference, the Parties reached a settlement totaling $62,000.

On February 7, 2014, this Court entered an Order preliminarily approving the proposed settlement on behalf of the class (the "Class" or the "Class Members"), preliminarily certifying the settlement class under Federal Rule of Civil Procedure 23(e), preliminarily approving of Virginia & Ambinder, LLP ("V&A"), as class counsel, and authorizing the Notice of Proposed Class Action Settlement ("Notice") and Claim Form and Release ("Claim Form") to the Class and FLSA claimants. (Doc. No. 32.) The Notice and Claim Form were mailed to all potential claimants at their last known addresses. (Decl. of Suzanne B. Leeds in Supp. of Final Approval of Settlement ("Leeds Decl.") ¶ 3.) Of the forty-four Notices sent, twenty-four individuals filed Claim Forms. (Leeds Decl. ¶ 4.) Pursuant to Federal Rule of Civil Procedure 23(e), the Court held a Fairness Hearing on April 30, 2014, at 10:00 a.m. to further discuss the terms of the settlement and to provide an opportunity for objections to be heard. No class members appeared, and no one objected to the settlement. (*Id.* at ¶ 5.)

3

### III.     DISCUSSION

#### A.     Plaintiffs Satisfy the Requirements of Rule 23

##### 1.     Numerosity

Plaintiffs meet all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3).  First, Plaintiffs satisfy Rule 23(a)(1)'s numerosity requirement. There are twenty-four Rule 23 Class Members, making joinder impracticable.  There is "no 'magic number' for determining numerosity in class actions." *Bruce v. Christian*, 113 F.R.D. 554, 556 (S.D.N.Y.1986) (citing *Ewh v. Monarch Wine Co., Inc.*, 73 F.R.D. 131, 132 (E.D.N.Y. 1977); *Stoner v. Miller*, 377 F. Supp. 177, 179 (E.D.N.Y. 1974)).  "Generally speaking, courts will find that the 'numerosity' requirement has been satisfied when the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." *Ansari v. N.Y. Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998) (citing *Town of New Castle v. Yonkers Contracting Co.*, 131 F.R.D. 38, 40 (S.D.N.Y. 1990); 5 James Wm. Moore et al., Moore's Federal Practice, § 23.22[3][a] (3d ed. 1997)).

##### 2.     Commonality

Second, the class satisfies Rule 23(a)(2), the commonality requirement.  The Class Members' grievances share common issues of fact and law, including whether Defendants failed to pay them minimum wages, tips, and gratuities for work performed at banquet events. *See McMahon v. Olivier Cheng Catering Co.*, No. 08 Civ. 8713 (PGG), 2009 WL 6583141, at *1 (S.D.N.Y. Dec. 29, 2009) (commonality satisfied where plaintiffs claimed that "Defendants misappropriated 'service charges' that customers believed were meant for Plaintiffs and failed to pay Plaintiffs an overtime premium").

4

### 3.     Typicality and Adequacy of the Named Plaintiffs

Plaintiffs satisfy Rule 23(a)(3), typicality, because Siler and Lee's claims arose from the same factual and legal circumstances that form the bases of the Class Members' claims. *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012). Plaintiffs satisfy the adequacy requirement of Rule 23(a)(4) because there is no evidence that Plaintiffs' interests are "antagonistic" to those of the other Class Members. *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *5 (S.D.N.Y. Sept. 16, 2011) (citing *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237 (WHP), 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007)).

In addition, Plaintiffs' counsel, V&A, will adequately represent the interests of the Class Members, and Defendants do not challenge the abilities of Plaintiffs' counsel. Fed. R. Civ. P. 23(a)(4). Plaintiffs' counsel asserts that V&A "has significant experience prosecuting large-scale wage and hour class and collective actions such as this one." (Leeds Decl. ¶ 11.) Courts have found the firm to be adequate class counsel in these types of cases. *See Guzman v. VLM*, No. 07 Civ. 1126 (JG) (RER) 2008 WL 597186, at *7 (E.D.N.Y. March 2, 2008) (finding V&A's "qualifications and expertise" "fully satisfactory"); *Velez v. Majik Cleaning Svc., Inc.*, No. 03 Civ. 8698 (SAS), 2005 WL 106895, at *5 (S.D.N.Y. Jan. 19, 2005) (finding that "class counsel are experienced commercial litigators who have successfully represented classes in numerous class actions and have considerable experience in labor law cases similar to the case at bar").

### 4.     Requirements of Rule 23(b)(3)

Plaintiffs also satisfy Rule 23(b)(3). Plaintiffs' common factual allegations and a common legal theory – that Defendants violated federal and state wage and hour laws by improperly taking a tip credit, improperly retaining gratuities, and failing to properly issue pay

stubs – predominate over any factual or legal variations among class members. *See Johnson*, 2011 WL 4357376, at *6 (class members were "unified by common factual allegations – that all class members were subjected to the same allegedly unlawful tip appropriation policies and other wage and hour policies," and that such common issues predominated "over any issues affecting only individual class members").

Finally, class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for Class Members, particularly those who lack the resources to bring their claims individually. *See Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451 (RLE), 2011 WL 4599822, at *3 (S.D.N.Y. Aug. 16, 2011). Plaintiffs and the Class Members have limited financial resources with which to prosecute individual actions. Concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction. Employing the class device here will achieve economies of scale for Class Members, conserve judicial resources, and avoid waste, delay, and repetitive proceedings by preventing inconsistent adjudications. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (class action against automobile company for defective latches superior when individual claims would burden judiciary and when high litigation costs relative to potential relief would disincentivize individual plaintiffs from bringing claims); *see also Morris*, 859 F. Supp. 2d at 617; *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 161, 164 (S.D.N.Y. 2008).

**B.     Approval of Settlement Agreement**

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the negotiating process leading to the settlement.

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116; *see also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238 (DLC), 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting Manual for Complex Litigation, Third, § 30.42 (1995)); *see also D'Amato*, 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4; *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761 (CM), 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002).

### 1. The Settlement is Procedurally Fair.

The settlement is procedurally fair, reasonable, adequate, and not a product of collusion. *See* Fed. R. Civ. P. 23(e); *Reyes*, 2011 WL 4599822, at *4. The settlement was reached after the Parties had independently performed audits and evaluated the claims and defenses, and engaged in arm's-length negotiations. (Joint Letter at 2.)

Prior to the settlement conference, Defendants "provided various documents regarding the amount of service charges remitted to the employees" and performed an audit "to determine if any wages were owed." (*Id.*) Plaintiffs then "independently performed their own audit of the records." (*Id.*) The Parties attended a settlement conference before the undersigned, where they reached a "global resolution" of the action. (*Id.*) These arm's-length negotiations involved "experienced, capable counsel" after "meaningful discovery" had taken place, raising a presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *Reyes*, 2011 WL 4599822, at *4.

In addition, courts encourage early settlement of class actions, when warranted, because it permits class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *See Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472 (KBF) (DCF), 2012 WL 5862749, at *2 (S.D.N.Y. Nov. 15, 2012) (endorsing early settlement of wage and hour class action); *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211 (LTS) (HP), 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082 (JCF), 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527 (DLC), 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case). The parties here acted responsibly in reaching an early settlement.

## 2. The Settlement is Substantively Fair.

The factors set forth in *Grinnell* provide the analytical framework for evaluating the substantive fairness of a class action settlement. Here, the factors weigh in favor of final approval. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the

8

litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463.

Litigation through trial would be complex, expensive and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

The second *Grinnell* factor also weighs in favor of final approval because the Class Members' reactions to the settlement were positive. The Notice "provided an overview of the claims in the lawsuit and terms of the settlement agreement." (Joint Letter at 3.) It also provided Class Members with "clear information regarding how to opt-out or be excluded from the settlement." (*Id.*) No Class Member objected to or requested to be excluded from the settlement. (Leeds Decl. ¶ 5.) This favorable response demonstrates that the Class approves of the settlement and supports final approval. *See Khait v. Whirlpool Corp.*, No. 06 Civ. 6381 (ALC), 2010 WL 2025106, at *5 (E.D.N.Y. Jan. 20, 2010) (the fact that no class members objected and two opted out demonstrated favorable response weighing in favor of final approval); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

The Parties have completed sufficient discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted). Here, through an efficient, informal exchange of information,

9

Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims and to accurately estimate the damages at issue. (Joint Letter at 2.) The Parties' participation in a settlement conference allowed them to further explore the claims and defenses. The third *Grinnell* factor weighs in favor of final approval.

The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits. *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698 (SAS) (KNF), 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). Here, Plaintiffs faced numerous risks as to both liability and damages, including overcoming Defendants' defenses that "the service charges and gratuities were properly remitted to Plaintiffs and putative class members, and that all statutory minimum wages had been provided." (Joint Letter at 2.) As the Parties state, "[t]hese disputed issues increased the risk that the Plaintiffs would not recover a significant amount of the damages they sought." (*Id.*) The proposed settlement eliminates this risk and other uncertainty. This factor therefore weighs in favor of final approval.

The risk of obtaining class certification and maintaining class and collective action certification through trial is also present. Contested class certification motions would likely require extensive discovery and briefing. After the close of discovery, Defendants might challenge Judge Furman's determination to certify the collective action by seeking decertification. Settlement eliminates the risk, expense, and delay inherent in the litigation process. The fifth *Grinnell* factor weighs in favor of final approval.

10

Even if Defendants could have withstood a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000) (alterations and citation omitted)). Accordingly, this factor is neutral and does not preclude the Court from approving the settlement.

The amount of the settlement weighs in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Frank*, 228 F.R.D. at 186 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Here, twenty-four individuals filed Claims Forms and will be joining in the settlement. (Leeds Decl. ¶ 4.) The settlement fund totals $62,000, of which $46,497.87 will be paid to the Class Members who filed Claim Forms. (*Id.* at ¶ 13.) The total amount appears reasonable given the size of the class and the fact that there were arm's-length negotiations between experienced counsel. Therefore, the seventh *Grinnell* factor weighs in favor of final approval.

The Court hereby grants Plaintiffs' Motions for Final Approval and approves the settlement as set forth in the Settlement Agreement.

**B.      Approval of the FLSA Settlement**

Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not

11

implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984); *see Reyes*, 2011 WL 4599822, at *6. Accordingly, the standard for approval of an FLSA settlement is lower than for a class action under Rule 23. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Reyes*, 2011 WL 4599822, at *6. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved. *Id.* at 1354; *Reyes*, 2011 WL 4599822, at *6.

In this case, the settlement was the result of arm's-length negotiation involving independent audits of Defendants' records. (Joint Letter at 2.) During the entire litigation, Plaintiffs and Defendants were represented by counsel experienced in wage and hour law. The Settlement Agreement resolves a clear and actual dispute under circumstances supporting a finding that is fair and reasonable. The Court hereby approves the FLSA settlements.

## C.     Dissemination of Notice

On February 7, 2014, the Court issued an Order preliminarily approving the proposed Settlement Agreement and providing for notice of the settlement to the Class Members and FLSA claimants. (Doc. No. 32.) Rule 23 and FLSA Notices were sent by first-class mail to each respective Class Member and FLSA claimant at his or her last known address. The Court finds that the Notices fairly and adequately advised Class Members of the terms of the settlement, as well as the Rule 23 Class Members' right to opt out of or to object to the settlement, and to appear at the Fairness Hearing on April 30, 2014. Class Members and FLSA claimants were

provided with the best notice practicable under the circumstances. The Court further finds that the Notices and their distribution comported with all constitutional requirements, including those of due process.

**D.     Attorneys' Fees and Costs, Administration Fees, and Service Awards**

On February 7, 2014, the Court preliminarily approved of V&A as Class Counsel because it met all of the requirements of Federal Rule of Civil Procedure 23(g). *See Damassia*, 250 F.R.D. at 165 (Rule 23(g) requires the court to consider "the work counsel has done in identifying or investigating potential claims in the action, . . . counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, . . . counsel's knowledge of the applicable law, and . . . the resources counsel will commit to representing the class") (internal quotation marks omitted).

Class Counsel are experienced employment lawyers. The work that Class Counsel has performed in prosecuting, litigating, and settling this case demonstrates their commitment to the class and to representing the class's interests. Class Counsel did substantial work identifying, investigating, and settling Plaintiffs' and Class Members' claims. (*See* Leeds Decl. ¶ 18.) Class Counsel have committed substantial resources to prosecuting this case, having spent approximately one and one-half years litigating the action and more than eighty attorney and paralegal hours prosecuting the case. (*Id.* at ¶ 14.)

The trend in this Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases such as this one. *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Wal-Mart Stores*, 396 F.3d at 121; *Reyes*, 2011 WL 4599822, at *7. In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award, *Sewell*, 2012 WL 1320124, at *13; *Reyes*, 2011 WL 4599822, at *7. Fee awards in wage and

hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg*, No. 08 Civ. 7840 (PAC), 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010). The FLSA and state wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights. *Reyes*, 2011 WL 4599822, at *7; *Sand*, 2010 WL 69359, at *3.

Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill the private attorney general role must be adequately compensated for their efforts. *Reyes*, 2011 WL 4599822, at *7; *Sand*, 2010 WL 69359, at *3. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Id*. Class Counsel's request for fees of approximately twenty-five percent of the fund, or $15,502.13, is, in fact, slightly lower than the "trend in the Second Circuit" of awarding one-third of the fund. *Lovaglio v. W & E Hospitality Inc.*, No. 10 Civ. 7351(LLS), 2012 WL 2775019, at *3 (S.D.N.Y. July 6, 2012) (citing *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)). In addition, no Class Member objected to Class Counsel's request for approximately one-quarter of the fund, which also provides support for Class Counsel's fee request.

### 1. *Goldberger* Factors

Reasonableness is the touchstone when determining whether to award attorneys' fees. In *Goldberger v. Integrated Resources, Inc*, 209 F.3d 43, 50 (2d Cir. 2000), the Second Circuit set forth the following six factors to determine the reasonableness of a fee application:

"(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."

### a. Class Counsel's Time and Labor

Class Counsel spent significant effort to achieve the $62,000 settlement, having expended over eighty hours of attorney, paralegal, and staff member time on the settlement. (Leeds Decl. ¶ 14.) Class Counsel prepared pleadings, conferred regularly with Plaintiffs, and prepared a motion for conditional certification pursuant to 29 U.S.C. § 216(b). (Joint Letter at 4; Leeds Decl. ¶ 18.) Class counsel also prepared for settlement negotiations, which included reviewing and auditing Defendants' payroll records, coordinating publication of the Settlement Notice, appearing before the Court for a settlement conference, and drafting and negotiating the settlement documents. (*Id.*) After the Parties reached a settlement in principle at the settlement conference before the undersigned, they worked towards reducing the settlement to formal settlement agreements.

### b. Magnitude and Complexity of the Litigation

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *In re Prudential Sec. In. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100 (S.D.N.Y. 1996). "FLSA claims typically involve complex mixed questions of fact and law," and issues must be resolved "in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). Among FLSA cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations are brought as an "opt out" class action pursuant to Rule 23 in the same action as the FLSA "opt in" collective action pursuant to 29

15

U.S.C. § 216(b). Justice is served and consistency and efficiency are achieved by having the litigation in one forum because the same set of operative facts are being applied and analyzed under both statutory frameworks. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001).

### c. Risk of Litigation

"Contingency risk is the principal, though not exclusive, factor courts should consider in their determination of attorneys' fees." *In re Dreyfus Aggressive Growth Mut. Fund Litigation*, 2001 WL 709262, *6 (S.D.N.Y. June 22, 2001). When considering fee applications, courts must approach them "with an eye to moderation" because of the belief that counsel bring class and collective actions as a "quest for attorneys['] fees." *Goldberger*, 209 F.3d at 53. The Court is mindful of the "temptation for lawyers to run up the number of hours for which they could be paid," *id.* at 48, but here finds that Class Counsel's reported hours are reasonable in light of the complexity and scale of the instant litigation. *See In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 343 (S.D.N.Y. 2011).

Here, Class Counsel faced risks on the merits of the claims, including overcoming Defendants' defenses that "the service charges and gratuities were properly remitted to Plaintiffs and putative class members, and that all statutory minimum wages had been provided." (Joint Letter at 2.) Overcome these defenses would have required significant time and resources for factual investigation of the claims. The instant matter was not a case "with almost certain prospects of a large recovery." *Goldberger*, 209 F.3d at 54. Class Counsel faced the general risk of recovery, namely, non-collection because of potential bankruptcy. Specifically, Class Counsel faced significant risk in proving the merits of the claim. The risk associated with litigation weigh in favor of granting a contingency fee.

### d. Quality of Representation

"To determine the quality of the representation, courts review, among other things, the recovery obtained and the background of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, *1 (S.D.N.Y. Jan. 31, 2007). Defendants have agreed to pay a total of $62,000 to settle this litigation. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement is reasonable.

Class Counsel has substantial experience "prosecuting large-scale wage and hour class and collective actions such as this one." (*See* Leeds Decl. ¶ 11 (listing cases).) Courts have viewed counsel's experience in wage and hour cases as directly responsible for a favorable settlement. *See Velez*, 2005 WL 106895, at *5 (finding that "class counsel are experienced commercial litigators who have successfully represented classes in numerous class actions and have considerable experience in labor law cases similar to the case at bar"); *Dabrowski v. Abax Inc.*, 84 A.D.3d 643 (1st Dep't 2011) (observing that V&A "has demonstrated its expertise and zealous representation of the plaintiffs here, as well as in prior class action cases which have reached this court on appeal"). Class Counsel's experience in wage and labor litigation also weighs in favor of finding that the fee award is reasonable.

### e. Requested Fee in Relation to the Settlement

Courts consider the size of a settlement to ensure that the percentage awarded does not constitute a windfall. "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement." *In re Indep.*

*Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, *6 (S.D.N.Y. Sept. 28, 2003). Here, Class Counsel notes that the twenty-five percent fee they are requesting from the settlement fund is "below the range awarded by courts in this Circuit." (Joint Letter at 4.) Therefore, this case does not require a "sliding scale" approach to prevent a windfall.

### f.   Public Policy Considerations

When determining whether a fee award is reasonable, courts consider the social and economic value of the class action, "and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999). The FLSA and New York Labor Laws are remedial statutes designed to protect the wages of workers. The remedial purposes of these statutes require adequate compensation for attorneys who protect those rights. *Khait*, 2010 WL 2025106, at *8; *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected."). Moreover, class actions are an invaluable safeguard for public rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). The public policy benefits of this action weigh in favor of awarding the requested attorneys' fees. Class Counsel successfully negotiated a settlement agreement that redresses a substantial portion of the monetary damage suffered by Class Members and complies with this Circuit's precedent. When considering all the *Goldberger* factors, the requested fee award appears to be reasonable.

### 2.   Lodestar "cross check"

Courts often apply the lodestar method as a "cross check" to determine if counsel's fee is reasonable. *See Goldberger*, 209 F.3d at 50. Here, V&A's total lodestar on the case totals $26,546.47. (Leeds Decl. ¶ 15.) Because the total lodestar is more than V&A's proposed fee of $15,502.13, a lodestar multiplier is not necessary.

### 3. Costs & Administration Fees

The Court awards Class Counsel reimbursement of its litigation expenses as well as costs related to administering the settlement. The proposed Settlement Agreement provides for attorneys' fees and costs to V&A in the total amount of $15,502.13, "which includes reimbursement of actual litigation expenses, costs and $2000.00 for administration of the claims." (Joint Letter at 4.) Courts typically allow counsel to recover their reasonable out-of-pocket expenses. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003). Here, Class Counsel's unreimbursed expenses include filing fees, court reporting, postage, photocopies, and electronic research. (Leeds Decl. Ex. A.) The Court finds that they are reasonable and were incidental and necessary to the representation of the class. The attorneys' fees and the amount in reimbursement of litigation costs and expenses shall be paid from the settlement fund.

Because of the small size of the Class, the Parties agreed that it would not be necessary to engage a third-party administrator to administer the Settlement Agreement. V&A coordinated the publication of the Settlement Notice, which included: preparing, printing, and disseminating the Notice and Claim Forms to the Class Members; receiving and reviewing Claim Forms submitted by Class Members; and responding to inquiries of Class Members. (Leeds Decl. ¶ 18.) The Court finds that the $2000 fee for the administration of the claims is reasonable. *See Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623 (PAC), 04 Civ. 4488 (PAC), 06 Civ. 5672 (PAC), 2010 WL 1948198, at *9 (S.D.N.Y. May 11, 2010).

### 4. Service Awards

Service awards are common in class action cases and compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *Reyes*, 2011 4599822, at *9. It is important to compensate plaintiffs for the time they spend and the risks they take. *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669 (BMC), 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012). The Court finds reasonable service awards of $4,500 to the Named Plaintiffs, Heather Siler and Theresa Lee. These amounts shall be paid from the settlement fund.

The "Effective Date" of the settlement shall be fifteen days after the date of this Order if no party appeals this Order. If a party appeals this Order, the "Effective Date" of the settlement shall be the day after all appeals are finally resolved. This Order shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

Within three days after the time to appeal this Order has expired, V&A shall distribute the funds in the settlement account by making the following payments in the order below:

(1) Paying Class Counsel approximately one-quarter of the fund ($15,502.13), which includes reimbursement of actual litigation expenses, costs, and $2,000 for administration of the claims;

(2) Paying service awards of $4,500 to Named Plaintiffs Heather Siler and Theresa Lee;

(3) Paying the remainder of the fund to Class Members in accordance with the allocation plan described in the Settlement Agreement.

**SO ORDERED this 30th day of June 2014**
**New York, New York**

*[signature]*

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**